| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **McMANIMON, SCOTLAND & BAUMANN, LLC**<br>75 Livingston Avenue, Second Floor<br>Roseland, NJ 07068<br>(973) 622-1800<br>Anthony Sodono, III (asodono@msbnj.com)<br>Sari B. Placona (splacona@msbnj.com)<br>*Proposed Counsel for PishPosh, Inc., the Chapter 11*<br>*Debtor and Debtor-in-Possession* | |
| In re:<br><br>PISHPOSH, INC.,<br><br>     Debtor. | Chapter 11<br><br>Case No. 25-15424 (CMG) |
| PISHPOSH, INC.,<br><br>     Plaintiff,<br>v.<br><br>SMPL LLC,<br><br>     Defendant. | Adv. Pro. No. |

**MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE, (I) SEEKING INJUNCTIVE RELIEF PREVENTING SMPL, LLC FROM DISPOSING OF DEBTOR'S INVENTORY (II) DECLARING INVENTORY PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 541; AND (III) COMPELLING TURNOVER OF ESTATE PROPERTY PURSUANT TO 11 U.S.C. § 542**

On the Brief:
Anthony Sodono, III, Esq.
Sari B. Placona, Esq.

## **PRELIMINARY STATEMENT**

SMPL LLC ("SMPL" or "Defendant") is a third-party logistics ("3PL") provider to PishPosh, Inc. (the "Debtor" or "Plaintiff"). SMPL holds the Debtor's inventory (the "Inventory") in its warehouse located at 800 Central Avenue, Farmingdale, New Jersey (the "Warehouse"). SMPL fulfills orders placed by the Debtor's customers upon purchase. The Debtor's Inventory held by SMPL is worth approximately $500,000[1], however, SMPL is improperly withholding shipment of customers' orders totaling approximately $100,000 of the total Inventory, due to a dispute between the Debtor and SMPL in violation of the automatic stay as the Inventory is property of the estate. Pursuant to certain business loans and security agreements with Altbanq Lending LLC ("Altbanq"), the Debtor received financing from Altbanq which is secured by the Inventory.

On or about April 1, 2025, the Superior Court of New Jersey, Monmouth County, Chancery Division, General Equity (the "State Court") entered an Order to Show Cause with Temporary Restraints (the "State Court OSC"), pursuant to an action filed by Altbanq against SMPL, under case caption *Altbanq Lending LLC v. SMPL, LLC*, bearing Docket No. L-1231-25. The State Court OSC ordered SMPL to appear on April 28, 2025, regarding the turnover of the Debtor's Inventory to Altbanq and enjoin SMPL from disposing, moving, selling, ruining, or otherwise interfering with the Debtor's Inventory. On April 28, 2025, the State Court entered an Order enjoining SMPL from disposing, moving, selling, disposing, ruining, or otherwise interfering with the Inventory (the "State Court Order").

On May 22, 2025, the Debtor's counsel emailed a letter to Yosef B. Jacobovitch, Esq., Burton Jacobovitch Law Group, counsel to SMPL (i) advising SMPL of the Debtor's bankruptcy filing the prior day on May 21, 2025, (ii) advising SMPL that the Inventory is now part of the

---

[1] The balance of the Inventory is most likely worth $50,000 if liquidated.

Debtor's bankruptcy estate, and (iii) to request SMPL turnover the Inventory to the Debtor. To date, the Debtor has not received a response from Mr. Jacobovitch. SMPL has defied the Debtor's requests. SMPL has no legal authority to remain in possession of the Debtor's Inventory. It must be required to turnover the Inventory immediately to prevent further damage to the Debtor and its estate.

The Court must order SMPL to turnover the Inventory to the Debtor immediately. The Debtor is concerned that SMPL will sell its Inventory in satisfaction of any amounts due and owed to SMPL by the Debtor. SMPL must be enjoined. Any amount due and owed to SMPL by the Debtor will be addressed as a claim against the Debtor's estate. SMPL cannot sell the Inventory in satisfaction of funds due and owed as it is property of the Debtor's estate. Moreover, SMPL is causing irreparable harm to the Debtor's chances of reorganization because SMPL is not fulfilling customers' orders in a timely fashion. Customers have reported shipments taking anywhere from three (3) to four (4) weeks to fulfill, which has caused the Debtor to have to place a disclaimer on purchases reflecting same. This delay is caused solely by SMPL's failure to promptly ship goods or for failure to ship goods at all. The Debtor's "frequently asked questions" section on its website represents shipments will take no longer than (6) days, which is not being met because of SMPL's failure to timely fulfill orders.

For the foregoing reasons, the Debtor respectfully requests that the Court execute the Debtor's Order to Show Cause (i) Seeking Injunctive Relief Preventing Defendant From Disposing Of Debtor's Inventory, (ii) Declaring Inventory Property of the Estate Pursuant to 11 U.S.C. § 541, and (iii) Compelling Turnover of Estate Property Pursuant to 11 U.S.C. § 542 (the "OSC").

4920-7073-4153, v. 1

## THE PARTIES

1.      The Debtor, incorporated in the State of Delaware, has a principal place of business 1915 Swarthmore Ave, Lakewood, NJ 08701 (the "Property").

2.      Pursuant to a Certificate of Merger of Domestic Liability Company Into a Domestic Corporation, the Debtor, as the surviving corporation merged into Pish Posh Baby, LLC. The merger was effective February 24, 2022.

3.      The Debtor is a rapidly growing online retailer specializing in premium baby products. Founded in 2015, the company has established itself as a leading e-commerce platform catering for baby products. The Debtor distinguishes itself by offering new and unique brands and products that inspire mothers and fathers to shop for baby products. The Debtor operates out of the Property where it showcases its products through a showroom boutique, its website (pishposhbaby.com), and third-party marketplaces like Amazon and Walmart.  The Debtor's product range includes brand-name strollers, car seats, and other baby gear and accessories.

4.      SMPL is a 3PL service provider to the Debtor, where SMPL stores the Debtor's Inventory at its Warehouse and fulfills shipments for the Debtor's customers.

## BACKGROUND FACTS

5.      The Debtor has Inventory held at SMPL's Warehouse, in which SMPL is a 3PL service provider to the Debtor.

6.      The Debtor acquired the Inventory using proceeds from certain loans extended by Altbanq, which holds a security interest in the Inventory.

7.      On April 1, 2025, Altbanq filed an action in State Court against SMPL, under case caption *Altbanq Lending LLC v. SMPL, LLC*, bearing Docket No. L-1231-25. The State Court entered the State Court OTSC against SMPL, which ordered SMPL to appear on April 28,

4920-7073-4153, v. 1

2025, regarding the turnover of the Debtor's Inventory to Altbanq and enjoin SMPL from disposing, moving, selling, ruining, or otherwise interfering with the Debtor's Inventory.

8. On April 28, 2025, the State Court entered the State Court Order enjoining SMPL from disposing, moving, selling, disposing, ruining, or otherwise interfering with the Inventory.

9. On May 21, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. ECF 1.

## LEGAL ARGUMENT

### POINT I

### PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF

Plaintiff is a corporation established in 2015. To fulfill its customers' orders, Plaintiff relies on the services of SMPL as a 3PL service provider. SMPL's repeated failures to timely fulfill shipments to the Debtor's customers has caused significant and ongoing harm to Plaintiff's business reputation, as customers lose confidence in Plaintiff's ability to deliver products promptly. These delays also jeopardize Plaintiff's prospects for a successful reorganization. Unless SMPL is compelled to **immediately** turn over the Inventory to the Debtor, the Debtor's operations will suffer irreparable harm, resulting in prejudice to creditors and undermining the Debtor's ability to reorganize.

In determining whether injunctive relief is appropriate, a court examines the following four (4) factors: (i) whether the movant shows a reasonable likelihood of success on the merits; (ii) whether the movant will be irreparably harmed by denial of the injunctive relief sought (and in a bankruptcy case specifically does it impair Debtor's ability to reorganize); (iii) whether the injury to the movant in the absence of injunctive relief outweighs the possible harm to the non-

4920-7073-4153, v. 1

movant if the injunction is granted; and (iv) the impact of a preliminary injunction on the public interest. See Jurista v. Amerinox Processing, Inc., 492 B.R. 707, 777 (D.N.J. 2013).  The Third Circuit has recognized that "an injunction shall issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." Id. at 777-78 (quoting Conestoga Wood Specialties Corp. v. Sec. of U.S. Health & Human Servs., 2013 WL 1277419 at *1 (3d Cir. Feb. 7, 2013)).

Here, as to the first factor, Plaintiff will prevail on the merits.  First, it is clear under Whiting Pools (cited below) that SMPL must return the Inventory.  Second, the Debtor will be irreparably harmed if the Inventory is not returned. If the Inventory is liquidated by SMPL or if the Debtor cannot timely fulfill shipments of its customers' orders, it will significantly impair the Debtor's chances at reorganization. Third, since SMPL will not suffer any harm by turning over the Debtor's Inventory, there is no need to weigh possible harms to the non-movant. Fourth, public interest encourages reorganization of businesses while being mindful of protecting the non-debtor parties.  Here, the Debtor will be able to reorganize and provide for payment to creditors. Thus, injunctive relief is necessary for Plaintiff to continue its operations and stay open for business.

## POINT II

### PLAINTIFF HAS MET THE STANDARD TO SECURE INJUNCTIVE RELIEF

As noted, it is well settled in the District of New Jersey that in order to be granted the relief of a preliminary injunction, a plaintiff must demonstrate that (1) plaintiff is likely to succeed on the merits; (2) denial will result in "irreparable harm" to the plaintiff; (3) granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) granting

4920-7073-4153, v. 1

the injunction is in the public interest. Maldonado v. Houstoun, 157 F.3d 179, 184 (3d Cir. 1988), cert denied, 526 U.S. 1130 (1999).

As to the first factor, Plaintiff can demonstrate a probability of success on the merits. A sufficient degree of success for a strong showing exists if there is "a reasonable chance, or probability, of winning." Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 229 (3d Cir. 2011). Accordingly, it "is not enough that the chance of success on the merits be better than negligible." In re Revel AC, Inc., 802 F.3d 558, 568-69 (3d Cir. 2015) (citing Nken v. Holder, 556 U.S. 418, 434 (2009)). For the reasons set forth below, Plaintiff has more than "a reasonable chance, or probability, of winning."

Under U.S. v. Whiting Pools, 46 U.S. 198 (1983), the IRS, pre-petition, placed a tax lien on certain property of the debtor. Once the debtor filed its petition, the IRS was required to turn over the property it seized because (1) § 542(a) requires turnover of all property of the estate that may be leased, sold, or used by trustee under § 363, and (2) seized property, in which debtor still had an interest, counted as such property. In addition, even though the Bankruptcy Code defines "property of the estate" as "all interests of the debtor in property," not "all property in which the debtor has an interest," the court did not take the definition to limit what can count as "property of the estate." Although the IRS had the right to seize and sell property under non-bankruptcy law, those rights were merely procedural, and meant to protect its substantive property interest – the lien – which is now protected by different bankruptcy procedures.

Section 542(a) of the Federal Rules of Bankruptcy Procedure requires an entity, other than a custodian, in possession of property of the debtor that the trustee in bankruptcy can use, sell, or lease under § 363 to deliver that property to the trustee. 11 U.S.C. § 542(a). Section 543(b)(1) of the Federal Rules of Bankruptcy Procedure requires a custodian in possession or

4920-7073-4153, v. 1

control of any property of the debtor to deliver the property to the trustee.  11 U.S.C. § 543(b)(1).

After the State Court OSC and State Court Order were entered, the Debtor filed its petition for reorganization on the Petition Date under Chapter 11 of the Title 11 of the United States Bankruptcy Code.  As set forth in Whiting Pools, the Court ordered the IRS to turn the property over to the debtor on the condition that the debtor provides the IRS with specified protection for its interest.  In this case, the Debtor is entitled to its Inventory in which SMPL has no security interest. Therefore, the Debtor is entitled to possession of its Inventory and SMPL must turn over same immediately.

As to the second factor, New Jersey courts have long recognized that "irreparable injury" is established by proof of substantial injury to a material degree coupled with inadequacy of money damages.  Board of Education of Union Beach v. New Jersey Education Association, 96 N.J. Super 371, 391 (App. Div. 1997), aff'd., 53 N.J. 29 (1968); Scherman v. Stern, 93 N.J. Eq. 625, 631 (E&A 1922); Marvel v. Jonah, 88 N.J. Eq. 295, 298 (E&A 1914).  Irreparable injury…[is] an injury that is material for which pecuniary damages would not afford adequate compensation.  See Bd. of Ed. of Union Beach, 96 N.J. Super. at 391.  The type of harm that the Court seeks to prevent is that which cannot be compensated with monetary damages due to the nature of the injury or the right affected.  Outdoor Sports Corp. v. A.F. of L. Local 23131, AFL, 6 N.J. 217, 229-230 (1951). New Jersey courts have long recognized the necessity for interlocutory injunctive relief in order to prevent irreparable injury that immediately threatens a party.  See New Jersey State Bar Ass'n v. Northern New Jersey Mortgage Assoc., 22 N.J. 184, 194 (1956). The object of a preliminary injunction is to prevent some threatening irreparable mischief, which should be averted until opportunity is offered for a full and deliberate investigation of the case.  Crowe v. De Gioia, 90 N.J. 126, 134 (1982).

4920-7073-4153, v. 1

The "total destruction of one's business good will and profits" is irreparable harm under New Jersey law. Ferraiulo v. Manno, 1 N.J. 105, 108 (1948). Further, in the bankruptcy context, the failure to return the Inventory will irreparably harm the Debtor's ability to reorganize. Failure to compel SMPL to return the Inventory to the Debtor will destroy its business, good will, profits, and ability to reorganize. Plaintiff will suffer irreparable harm without the injunction.

The irreparable harm must be more than just possible. On the second factor, the applicant must "demonstrate that irreparable injury is *likely* [not merely possible] in the absence of an injunction." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (emphasis in text). "While a reference to "likelihood" of success on the merits has been interpreted by courts to cover the generic range of outcomes, for irreparable harm we understand the Supreme Court's use of "likely" is more apt to mean occur than not." See generally Michigan v. U.S. Army Corps of Engineers, 667 F.3d 765, 788 (7th Cir. 2011) (holding that for harm to be likely "there must be more than a mere possibility that harm will come to pass . . . but the alleged harm need not be occurring or be certain before a court may grant relief") (citation omitted).

As to the third factor, the harm to the Plaintiff far outweighs the harm to the Defendant. "The third prong of the preliminary injunction standard requires me to consider 'whether granting preliminary relief will result in even greater harm to the nonmoving party.'" Am. Freedom Def. Initiative v. Se. Pennsylvania Transp. Auth., 92 F. Supp. 3d 314, 330 (E.D. Pa. 2015) (citing Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999)).

The Plaintiff submits that Defendant will not suffer any harm as the Plaintiff has no security interest in the Inventory. In contrast, if an injunction is not put in place, Plaintiff will be damaged and ultimately be out of business as it loses its customers base due to failure to meet its

9

shipment obligations.

Finally, public policy cries out for a just result. The Debtor cannot sustain its business without the promptly fulfilling customers' orders. As one court explained, "[t]he public has an interest in the fair and judicious application of the bankruptcy laws to the specific facts of each case." Gonzalez Class Action Plaintiffs v. Freedom Commc'ns Holdings, Inc. (In re Freedom Commc'ns Holdings, Inc.), No. 09-825, 2009 WL 4506553, at *2 (D. Del. Dec. 4, 2009); see also Ams. United for Separation of Church & State v. City of Grand Rapids, 922 F.2d 303, 306 (6th Cir. 1990) ("[t]he public interest lies in the correct application [of the law]"). "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994). Public interest recognizes that the Debtor is entitled to attempt to reorganize under Title 11 to protect its business and its creditors.

Plaintiff has successfully demonstrated all four (4) factors presented above.

## POINT III

### THE INVENTORY IS PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 541 AND SMPL MUST BE COMPELLED TO TURNOVER ESTATE PROPERTY TO THE DEBTOR PURSUANT TO 11 U.S.C. § 542

SMPL is in possession of the Debtor's Inventory worth approximately $500,000. Of the approximate $500,000 in Inventory, about $100,000 consists of goods allocated to fulfill existing customer orders, which SMPL has refused to ship thus harming the Debtor's business and chances at a successful reorganization. As noted, as a result of the filing of the bankruptcy petition, SMPL is required to return the Debtor's Inventory under Whiting Pools, Inc., 462 U.S. 198 (1983). Under 11 U.S.C. § 541(a)(1), the commencement of a bankruptcy case creates an

10

4920-7073-4153, v. 1

estate that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." This provision is interpreted broadly to encompass virtually all forms of property, including the Inventory which is the core asset of the Debtor's business. See 11 U.S.C. § 541(a)(1).

With it being established that the Inventory is property of the estate, 11 U.S.C. § 542(a) mandates that any entity in possession, custody, or control of such property must deliver it to the trustee or the debtor-in-possession unless the property is of inconsequential value, or the holder has a valid defense. The Supreme Court in Whiting Pools, Inc. held that even property seized prepetition by a secured creditor must be returned to the estate if it remains property of the debtor and is necessary for reorganization. Whiting Pools, 462 U.S. 198. SMPL is in possession, custody, and control of the Inventory, which is not of inconsequential value as it is worth approximately $500,000. SMPL has no valid defense to retain the Debtor's Inventory. Thus, because the Inventory is estate property pursuant to 11 U.S.C. § 541, SMPL must be compelled to turnover the Inventory to the Debtor pursuant to 11 U.S.C. § 542.

## CONCLUSION

Bankruptcy courts are equitable tribunals that apply equitable principles in the administration of bankruptcy proceedings. Local Loan Co. v Hunt, 292 U.S. 234, 240 (1934). Thus, for all the foregoing reasons, it is respectfully requested that the OSC be granted in its entirety and SMPL be compelled to turnover the Inventory to the Debtor immediately.

**McMANIMON, SCOTLAND & BAUMANN, LLC**
*Proposed Counsel for PishPosh, Inc., the Chapter 11 Debtor and Debtor-in-Possession*

Dated: June 3, 2025

By: ___/s/ *Sari B. Placona*_____
        Sari B. Placona

11

4920-7073-4153, v. 1